**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | |
|---|---|
| Anita Harris, individually and on behalf of all others similarly situated, | 3:21-cv-01040 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Kellogg Sales Company, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Kellogg Sales Company ("defendant") manufactures, labels, markets, and sells toaster pastries labeled as "Frosted Strawberry" under the Pop Tarts brand  ("Product").



2.      Defendant only promotes the Product's strawberry content in its labeling and marketing, such as on its website.

STRAWBERRY
"TIMELESS, YET YUMMY"

HALF-EATEN        STRAWBERRY
WITH A BITE OF THE PRODUCT




3.      The Product's website even shows consumers how to make a strawberry shortcake.



4.      The representations are misleading because they give consumers the impression the fruit filling contains a greater relative and absolute amount of strawberries than it does.

## I.   INCREASE IN CONSUMER SNACKING FUELS EMPHASIS ON HEALTHY INGREDIENTS

5.   Research has shown that "consumers are eating fewer meals, yet snacking more than ever."[1]

6.   Defendant is aware that a greater percentage of consumers are eating more snacks and has emphasized the importance of fruit ingredients to make up for what "people don't get enough of at meals."[2]

7.   According to one company, "[A]s snacking increases, so too does the focus on healthy products and ingredients."[3]

8.   Many consumers seek snacks which are a "healthy indulgence," which is a "a treat with all the flavor and taste desired, without the guilt of eating something 'bad' for you," due to the presence of ingredients known to confer positive health benefits.[4]

## II.   CONSUMERS VALUE STRAWBERRIES

9.   American consumers increasingly turn to strawberries for adding value to all types of food and "the most popular berry fruit in the world."

10.   According to the U.S. Department of Food and Agriculture, "Americans now consume twice as many strawberries as they did two decades ago."[5]

11.   Reasons for consumers choosing strawberries over other fruits include its adaptability and nutritive benefits.

12.   According to WebMD, strawberries "protect your heart, increase HDL (good)

---

[1] Elizabeth Louise Hatt, Snackin' in the sun, Winsight Grocery Business, May 1, 2013.
[2] The Story on Snacking, Kellogg's Nutrition.
[3] Mondelez Global, State of Snacking: 2020 Global Consumer Snacking Trends Study.
[4] FONA International, Trend Insight: Indulgence, November 28, 2018.
[5] The California Strawberry Commission, Consumer Trends: American Strawberry Consumption Doubles, May 7, 2013.

cholesterol, lower your blood pressure, and guard against cancer."[6]

13.    These benefits are because strawberries have one of the highest levels of nutrient-density of all fruits.

14.    Strawberries are "an excellent source of vitamin C," necessary for immune and skin health.

15.    One serving of strawberries provides more vitamin C than an orange.[7]

16.    Strawberries have uniquely high levels of antioxidants known as polyphenols.[8]

17.    Polyphenols are micronutrients that naturally occur in plants.

18.    These polyphenols include flavonoids, ellagitannins, flavanols and phenolic acid.[9]

19.    Polyphenols prevent or reverse cell damage caused by aging and the environment, which is linked to greater risk of chronic diseases.

20.    The benefits from strawberries cannot be provided by strawberry "flavor," which refers to compounds extracted from strawberries used solely for taste, without their nutritional value.

## III.   STRAWBERRIES ARE VALUED ABOVE OTHER FRUITS

21.    It is not just consumers' subjective preferences which value strawberries over other fruits.

---

[6] Andrea Gabrick, Nutritional Benefits of the Strawberry, WebMD.com; María Teresa Ariza, et al. "Strawberry achenes are an important source of bioactive compounds for human health." *International journal of molecular sciences* 17.7 (2016): 1103.

[7] Adda Bjarnadottir, MS, RDN, Strawberries 101: Nutrition Facts and Health Benefits, Healthline.com, March 27, 2019; Sadia Afrin, et al. "Promising health benefits of the strawberry: a focus on clinical studies." *Journal of agricultural and food chemistry* 64.22 (2016): 4435-4449.

[8] Tamara Y. Forbes-Hernandez, et al. "The healthy effects of strawberry polyphenols: which strategy behind antioxidant capacity?." *Critical reviews in food science and nutrition* 56.sup1 (2016): S46-S59.

[9] Francesca Giampieri, et al. "Strawberry consumption improves aging-associated impairments, mitochondrial biogenesis and functionality through the AMP-activated protein kinase signaling cascade." *Food chemistry* 234 (2017): 464-471; Francesca Giampieri, et al. "The healthy effects of strawberry bioactive compounds on molecular pathways related to chronic diseases." *Annals of the New York Academy of Sciences* 1398.1 (2017): 62-71.

22.    Market price data from the Bureau of Labor Statistics ("BLS") confirms that strawberries, when compared to other fruits, like stone fruits (apples) and citrus (oranges, grapefruits, lemons), are the most expensive of the major fruits.



23.    According to BLS, apples are typically between $1.20 and $1.50 per pound while strawberries are no less than between $2 and $4 per pound.[10]

24.    According to recent data from the USDA, pears are $1.552 per pound, while strawberries, at $2.318 per pound, are almost fifty (50) percent more expensive.



_____

[10] Stephen B. Reed, "Slicing through fruit price volatility," Beyond the Numbers: Prices and Spending, Vol. 3:28, Bureau of Labor Statistics, December 2014.

IV.   **STATE AND FEDERAL REGULATIONS REQUIRE FRONT LABEL TO DISCLOSE THAT FRUIT FILLING DOES NOT ONLY CONTAIN STRAWBERRIES**

25.   Federal and identical state regulations require a product's front label to contain a common or usual name which accurately identifies or describes, "in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("[a] federal regulation automatically adopted pursuant to this [Federal Food, Drug & Cosmetic] Act takes effect in this State on the date it becomes effective as a Federal regulation.").

26.   Defendant's representations violate 21 U.S.C. § 343(a)(1) and 410 ILCS 620/11, which deem a food misbranded when the label contains a statement that is "false or misleading."

27.   Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

28.   The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing products like Defendant's Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

29.   Whether a toaster pastry contains only strawberries or merely some strawberries and a significant amount of other, less valued fruit ingredients, is basic front label information consumers rely on when making quick decisions at the grocery store.

30.   Strawberries are the Product's characterizing ingredient, since their amount has a material bearing on price or consumer acceptance, and consumer believe they are present in an amount greater than is the case.

31.    The Product's common or usual name of "Frosted Strawberry – Toaster Pastries," is false, misleading, and deceptive because its filling contains a relatively significant amount of non-strawberry fruit ingredients – pears and apples – shown on the ingredient list.

**Ingredients: Enriched flour** (wheat flour, niacin, reduced iron, vitamin B1 [thiamin mononitrate], vitamin B2 [riboflavin], folic acid), **corn syrup, high fructose corn syrup, dextrose, soybean and palm oil** (with TBHQ for freshness), **sugar, bleached wheat flour**.

**Contains 2% or less of** wheat starch, salt, dried strawberries, dried pears, dried apples, leavening (baking soda, sodium acid pyrophosphate, monocalcium phosphate), citric acid, gelatin, modified wheat starch, yellow corn flour, caramel color, palm oil, xanthan gum, cornstarch, turmeric extract color, soy lecithin, red 40, yellow 6, blue 1, color added.

32.    The relative amounts of the ingredients in the filling are determined based on their listing in order of predominance by weight. 21 C.F.R. § 101.4(a)(1).

33.    Based on a quantitative estimate and analysis of the filling, it appears to or may even contain more non-strawberry fruit than strawberry ingredients.

34.    The Product's name is required to, but fails, to include the percentage of the characterizing strawberry ingredient in the filling, because its amount has a material bearing on price or consumer acceptance.

35.    Examples of this disclosure could be, "Fruit Filling – 40% Strawberry, 30% Apple, 30% Pear." 21 C.F.R. § 102.5(b).

36.    The Product's name, "Frosted Strawberry – Toaster Pastry," is misleading because

it includes "Strawberry," but does not include pears and apples, even though these fruits are stated in the fine print on the ingredient list. 21 C.F.R. § 101.18(b).

37.     Toaster pastries which contain strawberries as their predominant filling ingredient are not a rare or pricy delicacy that would make a reasonable consumer "double check" the relative amount of the strawberries by scouring the packaging.

38.     Toaster pastries with fillings which contain only strawberry fruits exist in the marketplace and are not technologically or otherwise unfeasible to produce.

39.     Competitor toaster pastries from Great Value (Walmart) and Clover Valley (Dollar Tree) are described as "frosted strawberry," with pictures of strawberries, but they put consumers on notice that they have *less* strawberry ingredients than consumers would otherwise expect, through the statement, "Naturally & Artificially Flavored."





40.    Although defendant's Product does not have added flavoring, these labels are used to show how consumers are misled by defendant's labeling, especially compared to similar products.

41.    Consumers seeing defendant's Product, which exclusively promotes strawberries, and the more "restrained" or truthful labeling of competitors, will purchase defendant's Product, believing it is higher quality than it is.

42.     The FDA has consistently warned companies that fail to describe their products with a non-misleading, common, or usual name:

> Your Sour Cherry Juice (two unique brand names) and Sour Grape Juice (four unique brand names) products are misbranded within the meaning of section 403(i)(1) of the Act [21 U.S.C. § 343(i)(1)] because the statement of identity does not bear an accurate common or usual name. According to 21 CFR 102.33(a), for a carbonated or noncarbonated beverage that contains less than 100 percent and more than 0 percent fruit or vegetable juice, the common or usual name shall be a descriptive name that meets the requirements of 21 CFR 102.5(a).[11]

43.     The marketing and sale of foods which are advertised as containing valuable strawberries but have a significant amount less strawberry ingredients than promised, is not unknown within this Circuit.

44.     In the fall of 1960, the FDA seized a shipment of "Strawberry Bars" where:

> strawberries, had been in whole or in part omitted or abstracted therefrom; 402(b)(4) – figs and dates had been mixed or packed with the articles so as to increase their bulk or weight and make them appear of greater value than they were; and 403(a)-the label statements and the label vignettes depicting whole fresh fruit, apricots and strawberries, were false and misleading as applied to an article (Apricot Bars) containing no apricots, and an article (Strawberry Bars) containing a mixture of figs and dates and some strawberries.

> FDA, Notices of Judgment, No. 28302, "Fruit Bars," F.D.C. No. 45358, E. Dist. Mich., July 11, 1961.

45.     The Product is unable to confer any of the health-related benefits of strawberries because the amount of strawberry ingredients is insufficient to provide the benefits of these fruits.

46.     The Product cannot provide a true strawberry taste, because these attributes are overwhelmed by the significant amounts of pears and apples compared to strawberries.

## V.     ADDED COLOR FURTHERS DECEPTION AS TO STRAWBERRY CONTENT

47.     According to the head of a prominent flavor and color manufacturer, "Color is the first thing a consumer may consider when purchasing a food or beverage item."

---

[11] FDA Warning Letter, Shemshad Food Products, Inc., W/L 28-11, March 11, 2011.

48.     To give consumers the false impression that the Product contains a greater absolute and relative amount of strawberries than it does, it contains red 40, a synthetic food coloring made from petroleum.

49.     Red 40 makes the strawberry-pear-apple combination look bright red, like it is only strawberries or has more strawberries than it does.

50.     According to one website, "Artificial dyes are also used to help hide the fact that many processed foods don't contain much (or any) of the nutrients or foods they claim to have."

51.     Without the added coloring, consumers would be suspect of a product labeled as "Strawberry," because the filling would be a more subdued tone instead of the bright red.

52.     This could cause consumers to inspect the ingredient list to determine the truth.

53.     However, reasonable consumers are not so distrustful to think they will be misled when buying a well-known product like the Pop-Tarts from Kellogg's here.

54.     The Product does not reveal the addition of this artificial coloring anywhere other than the ingredient list.

55.     Though Red 40 has been approved by the FDA for use in food products and must be listed as an ingredient on labels, it has been banned at one time or another throughout Australia and most of Europe due to health concerns, and it is strongly linked to learning disorders and hyperactivity in children.

## VI.   CONCLUSION

56.     The cost of using more strawberry ingredients, relative to pears and apples, would be several cents per Product – not a significant addition to the price.

57.     Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other

comparable products or alternatives.

58.   The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

59.   Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

60.   Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

61.   The Product is sold for a price premium compared to other similar products, no less than $5.49 for 12 Pop-Tarts (20.3 OZ), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

62.   Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

63.   The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

64.   Plaintiff Anita Harris is a citizen of Illinois.

65.   Defendant Kellogg Sales Company is an Delaware corporation with a principal place of business in Battle Creek, Calhoun County, Michigan

66.   The parties are citizens of different states.

67.   Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

Parties

68.     Plaintiff Anita Harris is a citizen of Cahokia, Saint Clair County, Illinois.

69.     Defendant Kellogg Sales Company, is a Delaware corporation with a principal place of business in Battle Creek, Michigan, Calhoun County.

70.     Defendant is one of the largest food manufacturers in the world.

71.     Defendant is known as a pioneer of breakfast foods – Special K, Corn Flakes, Nutri-Grain Bars and Pop-Tarts, among other items.

72.     The Product is sold at tens of thousands of retail locations – grocery stores, drug stores, big box stores, convenience stores, etc. – and online.

73.     The Product is sold individually (packet of two) and boxes of various numbers, including 12 and 32 toaster pastries.

74.     Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including Walmart, 1511 Camp Jackson Rd, Cahokia, IL 62206, throughout 2020 and 2021, among other times.

75.     Plaintiff bought the Product because she expected it would have more of the named fruit ingredient.

76.     Plaintiff wanted more than a "strawberry taste," which she nevertheless failed to receive, due to the relatively greater amount of pears and apples.

77.     Plaintiff wanted a relatively greater amount of strawberry ingredient, which was not received due to the unexpected and relatively significant amounts of pears and apples

78.     Plaintiff expected the filling would contain more strawberry ingredients than it did.

79.     Plaintiff did not expect that the filling would contain a non-de minimis amount of non-strawberry fruit ingredients.

80.     Plaintiff bought the Product at or exceeding the above-referenced price.

81.     Plaintiff relied on the representations identified here.

82.     Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

83.     Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

84.     The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

85.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

Class Allegations

86.     Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

**Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.

**Consumer Fraud Multi-State Class:** All persons in the States of Iowa and Arkansas who purchased the Product during the statutes of limitations for each cause of action alleged.[12]

87.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

88.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

---

[12] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: Iowa (Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 et seq.); Arkansas (Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et. seq.).

89.    Plaintiff is an adequate representative because her interests do not conflict with other members.

90.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

91.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

92.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

93.    Plaintiff seeks class-wide injunctive relief because the practices continue.

**Illinois Consumer Fraud and Deceptive Business Practices Act**
**("ICFA"), 815 ILCS 505/1, et seq.**

**(Consumer Protection Statute)**

94.    Plaintiff incorporates by reference all preceding paragraphs.

95.    Plaintiff and class members desired to purchase a product had a greater absolute and relative amount of strawberry ingredient.

96.    Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

97.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

98.    Plaintiff relied on the representations.

99.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

100.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

101.   Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

102.   As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

103.   In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq</em>.</u>

104.   The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it had a greater absolute and relative amount of strawberry ingredient.

105.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

106.   This duty is based on Defendant's outsized role in the market for this type of Product.

107.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

108.   Defendant received notice and should have been aware of these issues due to

complaints by regulators, competitors, and consumers, to its main offices.

109.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

110.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

111.   Defendant had a duty to truthfully represent the Product, which it breached.

112.   This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodian of the Kellogg's brand.

113.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a nationally recognized and trusted brand.

114.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

115.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

116.   Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it had a greater absolute and relative amount of strawberry ingredient

117.   Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

118.   Defendant obtained benefits and monies because the Product was not as represented

and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   August 21, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com